UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BAR-K, INC., et al.,<br><br>    Defendants. | Case No. 14-cv-05549-JSW   (JSC)<br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 22 |

Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor ("Plaintiff") brings this action against Bar-K, Inc. (the "Company"), the Bar-K 401(k) Plan (the "Plan") and individual defendants Bruce Horwitz and Walter Ng, two fiduciaries of the Plan, (collectively, "Defendants") alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1191c.[1] Plaintiff alleges that Defendants breached their fiduciary duties to plan members by making imprudent investments, prohibited extensions of credit, improper diversion of participant loan repayments, prohibited payments to themselves, and failing to appoint a trustee to the Plan.

Presently before the Court is Plaintiff's unopposed Motion for Default Judgment against Defendant Bar-K, Inc. (the "Company"). (Dkt. No. 22.) Plaintiff seeks judgment from the Court holding the Company liable for a number of ERISA violations and seeking equitable relief in the form of removal of the Company from its position as Plan Administrator and named fiduciary of the Plan and appointment of an independent fiduciary to the Plan. The Motion was referred to the

---

[1] The Plan is named as a defendant pursuant to Federal Rule of Civil Procedure 19 to ensure that the Court can grant full relief, but none of the claims are alleged against the Plan. (*See* Dkt. No. 22 at 3 n.1; *see generally* Dkt. No. 1.)

undersigned magistrate judge for a report and recommendation. (Dkt. No. 23.) Having considered Plaintiff's submission, and having had the benefit of oral argument on June 4, 2015, the Court RECOMMENDS that the motion be GRANTED.

**BACKGROUND**

**A.     Factual Background**

The following facts are taken from the complaint and the declaration of Department of Labor Supervisory Investigator Robert Paine, filed in support of Plaintiff's motion for default judgment. (Dkt. Nos. 1, 22-1.)

1.     The Parties

The Plan is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3) and is subject to the provisions of Title I of ERISA pursuant to ERISA Section 4(a), 29 U.S.C. § 1003(a). (Dkt. No. 1 ¶ 4.) The Company established the Plan effective August 1, 1996, to provide benefits to its employees upon retirement, death, or disability. (*Id.* ¶ 8.) The Plan was restated under the current Adoption Agreement effective January 1, 2009. (Dkt. No. 22-1 ¶ 6(b).)

The Company is a California corporation. (Dkt. No. 1 ¶ 5.) The Company is the Plan Sponsor, Plan Administrator, a fiduciary of the Plan that exercised discretionary authority and control with respect to the management and disposition of the plan and its assets within the meaning of ERISA Section 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii), and a party in interest to the Plan within the meaning of ERISA Section 3(14)(A), (C), 29 U.S.C. § 1002(14)(A), (C). Defendants Ng and Horwitz were also fiduciaries of the Plan and parties in interest to the Plan within the meaning of ERISA. (Dkt. No. 1 ¶¶ 6-7.)

2.     Conduct Involving RE Loans LLC

Beginning on or around December 1, 2002 until on or around June 30, 2008, the Plan invested in RE Loans LLC. (*Id.* ¶ 10.) The Plan invested a total of $912,654.71 in RE Loans LLC. (Dkt. No. 22-1 ¶ 6(d).) The Plan continued to invest in RE Loans LLC even after the manager of RE Loans LLC informed investors in 2007 that one-quarter of its loans were in default. (*Id.*) Beginning in January 2008, Ng began diverting the Plan's investments in RE Loans

1  LLC to other accounts to conceal the investments. (*Id.*) By continuing to invest Plan assets in RE

2  Loans LLC, Defendants failed to act with the care, skill, prudence, and diligence under the

3  circumstances then prevailing that a prudent person acting in a like capacity and familiar with such

4  matters would use in the conduct of an enterprise of a like character and with like aims in violation

5  of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). (Dkt. No. 1 ¶ 11.)

6  Since on or around November 1, 2007, RE Loans LLC has been a party in interest to the

7  Plan within the meaning of ERISA Section 3(14)(G), 29 U.S.C. § 1002(14)(G), as an entity with at

8  least fifty percent of the voting power held by Ng, a fiduciary to the Plan. (Dkt. No. 1 ¶ 14.)

9  Between on or around November 1, 2007 and June 30, 2008, the Plan lent money to RE Loans

10  LLC in exchange for promissory notes. (*Id.* ¶ 15.) By lending money to RE Loans LLC, Ng and

11  the Company breached their fiduciary duties to the Plan in violation of ERISA Section

12  404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), and caused the Plan to engage in transactions which they

13  knew or should have known constituted a direct or indirect lending of money or other extension of

14  credit between the Plan and a party in interest in violation of ERISA Section 406(a)(1)(B), 29

15  U.S.C. § 1106(a)(1)(B). (*Id.* ¶ 16.)

16  From on or around December 1, 2002 until November 1, 2007, RE Loans LLC was a Plan

17  asset within the meaning of 29 C.F.R. § 2510.3-101, and the Company collected fees for providing

18  services to RE Loans LLC, a party in interest to the Plan. (Dkt. No. 1 ¶¶ 28-29.) By collecting

19  these fees, the Company dealt with assets of the Plan in its own interest in violation of ERISA

20  Section 406(b)(1), 29 U.S.C. § 1106(b)(1). (*Id.* ¶ 30.) Defendants Ng and Horwitz, as managers

21  of B-4 Partners LLC, collected fees as investment manager of RE Loans LLC, but were also

22  fiduciaries to the Plan from December 1, 2002 until November 1, 2007. (*Id.* ¶¶ 35-36.) By

23  collecting fees from a Plan asset, Ng and Horwitz dealt with Plan assets in their own interests in

24  violation of Section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B). (*Id.* ¶ 37.) The Company is liable

25  for these violations of Ng and Horwitz because it participated knowingly in these breaches of

26  fiduciary duty and/or had knowledge of the breaches of a co-fiduciary and failed to take

27  reasonable efforts to remedy the breaches in violation of ERISA Section 405(a), 29 U.S.C.

28  § 1105(a). (*Id.* ¶ 38.) RE Loans LLC filed for bankruptcy in September of 2011, and to date the

Plan has not recovered any of its investment in RE Loans LLC. (Dkt. No. 22-1 ¶ 6(f).)

       3.      <u>Conduct Involving Mortgage Fund 08 LLC</u>

From on or around July 1, 2008 until May 31, 2009, the Plan invested in Mortgage Fund 08 LLC ("MF08 LLC"). (Dkt. No. 1 ¶ 24.) MF08 LLC's mortgage pool was managed by the same individuals who managed RE Loans LLC. (Dkt. No. 22-1 ¶ 6(g).) The offering memorandum for MF08 LLC's mortgage pool stated that it may purchase loans from RE Loans LLC, which had a substantial percentage of defaulting loans in its portfolio. (*Id.*) In total, the Plan invested $75,166.30 in MF08 LLC. (*Id.*) MF08 LLC was placed into involuntary bankruptcy in September of 2011, and to date the Plan has not recovered any of its investment into MF08 LLC. (*Id.* ¶ 6(f).) In making these investments, Ng and the Company failed to act with reasonable care in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

       4.      <u>Other Improper Conduct</u>

The Plan has a participant loan program, whereby Plan participants can take out loans from their Plan accounts. (Dkt. No. 1 ¶ 19.) When participant loans are repaid, Plan documents require repayments be placed in a segregated account. (*Id.*) Since on or around September 30, 2008, Defendants diverted participant loan repayments instead of placing those repayments in the segregated account as the Plan requires. (*Id.* ¶ 20.) In doing so, Defendants Ng and the Company failed to act solely in the interest of the Plan's participants and beneficiaries in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); failed to act with reasonable care, skill, prudence and diligence under the circumstances in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and failed to act in accordance with the documents and instruments governing the Plan in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). (Dkt. No. 1 ¶ 21.)

Plan documents gave the company authority to remove and appoint trustees to the Plan. (*Id.* ¶ 42.) The Plan's trustee resigned effective August 29, 2010, and the Company has not appointed a trustee since that time. (*Id.* ¶¶ 41-42.) The Company's failure to appoint a trustee is a failure to hold the assets of the Plan in a trust in violation of ERISA Section 403(a), 29 U.S.C. § 1103(a).

4

\* \* \*

As a direct and proximate result of each of these breaches of fiduciary duty, the Plan has suffered losses, including lost-opportunity income, for which Defendants are jointly and severally liable pursuant to ERISA Section 409, 29 U.S.C. § 1109. (Dkt. No. 1 ¶¶ 12, 17, 22, 32, 39, 45.) According to the Paine Declaration, the Plan has suffered $1,310,252.31 in losses, including lost-opportunity costs calculated in accordance with IRC Section 6621(a)(2), 26 U.S.C. § 6621(a)(2) and including pre-judgment interest. (*See* Dkt. No. 22 at 9 & n.2.)

In the complaint, Plaintiff seeks an order requiring Defendants to restore to the Plan any losses resulting from their fiduciary duties and to correct the prohibited transactions, including reimbursing the Plan for all improper fees collected during the relevant time period; a full accounting of the Plan; an order permanently enjoining Defendants from violating Title I of ERISA; an order removing the Company as fiduciary to the Plan and permanently enjoining Ng and Horwitz from serving as fiduciary to any ERISA-covered employee benefit plan; appointment of an independent fiduciary with full discretionary authority to administer the Plan and requiring Defendants to pay costs associated with that independent fiduciary; an order requiring Defendants to cooperate with the independent fiduciary; and an award of costs of this action to Plaintiff. (Dkt. No. 1 at 8.)

### B. Procedural History

On March 13, 2009, the Employee Benefits Security Administration, a division of the Department of Labor, received notice of a state investigation into investments in real estate loans, and also learned that the Plan was among the investors. (Dkt. No. 22-1 ¶ 5.) The Employee Benefits Security Administration opened a formal investigation into the Plan on April 16, 2009. (*Id.* ¶ 6.) On December 19, 2014, Plaintiff initiated this enforcement action pursuant to Title I of ERISA, which authorizes Plaintiff to file and prosecute claims against fiduciaries and others who commit violations of ERISA. *See* ERISA Section 502(a)(2), (5), 29 U.S.C. § 1132(a)(2), (5).

In January of 2015, after Ng and Horwitz waived service of process, the Court entered consent judgments against them. (Dkt. Nos. 13, 14.) Judgment was entered against Ng in the amount of $1,310,252.16, including lost-opportunity costs and pre-judgment interest calculated at

the rate set forth in 26 U.S.C. § 6621. The consent judgment holds Ng jointly and severally liable for the Plan's losses. Judgment was entered against Horwitz in the amount of $30,718.72 in losses and lost-opportunity costs with interest to accrue at the Section 6621 statutory rate if not paid to the Plan within 10 days. Both consent judgments permanently enjoin Ng and Horwitz from serving as fiduciary to any ERISA-covered employee benefit plan, and ordered the individual defendants to cooperate with an independent fiduciary. Ng's consent judgment requires him to bear the costs of appointing the independent fiduciary.

Plaintiff served the Company on February 5, 2015. (Dkt. No. 17.) The Company failed to answer or otherwise respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure. In fact, to date, the Company still has not answered or otherwise appeared to defend itself in this action. On March 10, 2015, Plaintiff requested that the Clerk enter the Company's default. (Dkt. No. 18.) The Clerk entered default against the Company on March 12, 2015. (Dkt. No. 21.)

Presently before the Court is Plaintiff's Motion for Default Judgment. Pursuant to ERISA Section 502(a)(5), 29 U.S.C. § 1132(a)(5), Plaintiff asks that the Company be removed as fiduciary and requests that an independent fiduciary be appointed to manage and administer the Plan.

**DISCUSSION**

**A.   Jurisdiction and Service of Process**

Courts have an affirmative duty to examine their own jurisdiction—both subject matter and personal jurisdiction—when entry of default judgment is sought against a party in default. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e). Personal jurisdiction arises from service upon the Company in California. (*See* Dkt. No. 17.) *See Burnham v. Sup. Ct.*, 495 U.S. 604, 620-21 (1990).

The Court must also assess whether the defendant against whom default judgment is sought was properly served with notice of the action. *See Solis v. Cardiografix*, No. 5:12-cv-01485 EJD, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012). Plaintiff served the summons and complaint on Company by serving its president, Kelly Ng, who is also the registered agent for

6

1  service of process for the Company. (Dkt. No. 17; Dkt. No. 18-1 ¶¶ 5-6.) This constitutes proper

2  service on the Company. *See* Fed. R. Civ. P. 4(e)(1) (providing for service "pursuant to the law of

3  the state in which the district court is located"); Cal. Code Civ. P § 416.10(a), (b) (a summons and

4  complaint may be served on a corporation by delivering a copy of the documents to the "person

5  designated as "agent for the service of process" or "president or other head of the corporation").

6  **B.     Default Judgment**

7      1.     <u>Legal Standard</u>

8      After entry of default, a court may grant default judgment on the merits of the

9  case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a

10  discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the

11  following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the complaint related to liability are deemed to have been admitted by the non-defaulting party. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Allegations regarding damages, however, are not deemed admitted; to that end, the Court has the discretion to consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1000, 1010 (N.D. Cal. 2001) (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917).

    The majority of the *Eitel* factors support default judgment in this case.

    2.     <u>Application</u>

        a.     *Possibility of Prejudice*

    The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default judgment is not entered. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D.

1    Cal. 2010). Here, prejudice will flow from the denial of default judgment because absent relief,
2    Plaintiff would be without recourse to enjoin the challenged conduct and enforce compliance with
3    ERISA. *See, e.g.*, *Solis v. Innovative Steel Sys., Inc.*, No. CIV S-12-0276 GEB CKO, 2012 WL
4    1552791, at *3 (E.D. Cal. Apr. 27, 2012) (finding prejudice to the Secretary of Labor if default
5    judgment were not entered on breach of fiduciary duties ERISA claims). Moreover, plan
6    participants and beneficiaries also would be prejudiced if default judgment was not entered as they
7    would continue to be unable to recoup lost Plan assets. *See, e.g.*, *Cardiografix*, 2012 WL
8    3638548, at *3 ("[F]ailure to enter default judgment in favor of Plaintiff would result in prejudice
9    to the plan participants, who have been denied the proper operation of their employee benefit
10   plan."); *Chao v. Zoltrix, Inc.*, No. C 07-00610 WHA, 2007 WL 2990429, at *3 (N.D. Cal. Oct. 11,
11   2007) (finding prejudice to the participants and beneficiaries of the plan if the Secretary of Labor
12   was not granted default judgment); *Innovative Steel Sys., Inc.*, 2012 WL 1552791, at *3 (finding
13   prejudice to plan participants if the Secretary of Labor was not granted default judgment). Thus,
14   this favor weighs in favor of default judgment.

15              b.      *Merits of the Substantive Claim and Sufficiency of the Complaint*

16   The Court considers the next two factors—the merits of Plaintiff's substantive claims and
17   the sufficient of the complaint—together because of the relatedness of the two inquiries. In
18   particular, the Court must determine whether the allegations in the complaint are sufficient to state
19   a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.
20   1978); *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). As
21   discussed above, after entry of default, the well-pleaded allegations in the complaint regarding
22   liability are taken as true, except as to the amount of damages. *Fair Housing of Marin v. Combs*,
23   285 F.3d 899, 906 (9th Cir. 2002).

24   Plaintiff alleges that the Company is the Plan Sponsor and Plan Administrator, and
25   therefore a fiduciary of the Plan within the meaning of ERISA Section 3(21)(A)(i), 29 U.S.C.
26   § 1002(21)(A)(i), (ii). Plaintiff alleges the following violations of ERISA:

27   (1) the Company, acting in its fiduciary capacity, made imprudent investments in RE
28   Loans LLC after October 2007 that constituted a breach of the Company's fiduciary duties to Plan

8

participants and beneficiaries by failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims under ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

(2) the Company, acting in its fiduciary capacity, failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims under ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) and caused the Plan to engage in transactions which they knew or should have known constituted a direct or indirect lending or money or other extension of credit between the Plan and a party in interest in violation of ERISA Section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B) by lending money to RE Loans LLC, a party in interest to the Plan due to more than fifty percent voting power held by a Plan fiduciary, between November 1, 2007 and June 30, 2008;

(3) the Company, acting in its fiduciary capacity, diverted participant loan repayments instead of placing those repayments in a segregated account as Plan documents require, and in doing so failed to act solely in the interest of Plan participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Plan administration in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(B); failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims under ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and failed to act in accordance with the documents and instruments governing the Plan in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

(4) the Company, acting in its fiduciary capacity, made imprudent investments in Mortgage Fund 08 LLC from July 1, 2008 to May 31, 2009, that constituted a breach of the Company's fiduciary duties to Plan participants and beneficiaries by failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims under ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)

(5) the Company, acting in its fiduciary capacity, collected fees for providing services to RE Loans LLC, which was a party in interest to the Plan and Plan asset pursuant to 29 C.F.R. § 2510.3-101, and in doing so dealt with Plan assets in the Company's own interest in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1);

(6) Ng and Horwitz, acting in their fiduciary capacities, managed B-4 Partners LLC, which collected fees as investment manager of RE Loans LLC and therefore Ng and Horwitz dealt with Plan assets in their own interests in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1), and the Company knowingly participated in those breaches or had actual or constructive knowledge of such breaches by co-fiduciaries and failed to take reasonable efforts to remedy such breaches in violation of ERISA Section 405(a), 29 U.S.C. § 1105(a);

(7) the Company failed to appoint a trustee with authority and discretion to manage and control the plan's assets after the trustee resigned effective August 29, 2010 in violation of ERISA Section 403(a), 29 U.S.C. § 1103(a), which provides that "all assets of an employee benefit plan shall be held in trust by one or more trustees . . . the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan[.]"

These factual allegations, taken as true, show that the Company abandoned its responsibilities as fiduciary to the Plan and instead placed its own interests above that of the Plan participants. The merits of the claims are even stronger when considering the declaration of Employee Benefits Security Administration investigator Paine, who avers more specific facts about where the Plan assets went during the relevant time period—particular about why the investments in RE Loans LLC and Mortgage Fund 08 LLC were imprudent: that is, because the investments were made with full knowledge that the mortgage pools contained a substantial portion of loans in default. (Dkt. No. 22-1 ¶ 6(e), (g).)

Pursuant to ERISA Section 502(a)(5), 29 U.S.C. § 1132(a)(5), Plaintiff has standing as Secretary of the U.S. Department of Labor to bring a civil action to enjoin any practice that violates any provision of Title I of ERISA, and to obtain other appropriate equitable relief to

redress such violation or enforce any provision of Title I of ERISA.  Appropriate equitable relief includes the appointment of an independent fiduciary to carry out the proper administration and management of a benefit plan.  *Donovan v. Mazzola*, 716 F.2d 1226, 1237-39 (9th Cir. 1983).  Plaintiff's complaint, therefore, has merit and is sufficiently pleaded.  These factors therefore weigh in favor of entry of default judgment as for all seven alleged ERISA violations.

        c.    *Amount of Money at Stake*

The fourth *Eitel* factors considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citation omitted).  However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

In the complaint, Plaintiff seeks to hold the Company jointly and severally liable for all losses stemming from the above-described breaches of fiduciary duty, requiring the Company to restore losses to the Plan.  (*See* Dkt. No. 1 at 8.)  The Paine Declaration indicates that the Plans losses from the breaches totals $1,310,252.16.  (See Dkt. No. 22-1 ¶ 7.)  Although the motion for default does not make clear whether Plaintiff is seeking an order requiring the Company to restore the full amount of the losses, (*see* Dkt. No. 22 at 3), at oral argument Plaintiff clarified that it does seek such relief.  The Paine Declaration and accompanying exhibits indicate why that amount was reached and connects it clearly and logically to each breach of fiduciary duty alleged.  (*See* Dkt. Nos. 22-1, 22-2, 22-3, 22-4, 22-5.)  On the other hand, the amount is large, which is a factor disfavoring default judgment.  *See Eitel*, 782 F.2d at 1472 (stating that the fact that three million dollars was at stake, when considered in light of the parties' dispute as to material facts, supported decision not to enter default judgment); *see also Zoltrix*, 2007 WL 2990429, at *3 (stating that the Plan assets of $60,989.77 "pales beside the three million dollars at stake in *Eitel*" and entering default judgment). The amount of Plan assets at stake here is more than that at issue in *Zoltrix*, but less than half of the amount at issue in *Eitel*; falling somewhere in the middle, the factor may not weigh for or against default.

11

The only other sum of money involved is Plaintiff's request that any independent fiduciary appointed by the court be authorized to receive $13,000 in fees and expenses payable from the assets of the Plan. (Dkt. No. 22 at 4.) This amount is certainly higher than the fee and cost amount generally awarded for operation of an independent fiduciary. *Cf. Innovative Steel Sys., Inc.*, 2012 WL 1552791, at *5 (awarding $1,500 in fees and costs payable from plan assets of fund the independent fiduciary chosen to manage and administer the plan); *Solis v. Vigilance, Inc.*, No. C 08-05083 JW, 2009 WL 2031767, at *3 (N.D. Cal. July 9, 2009) (awarding $3,500 in fees and expenses payable from plan assets to fund the independent fiduciary chosen to manage and administer the plan); *Zoltrix*, 2007 WL 2990429, at *3 (seeking $2,971.25 in fees and expenses payable from plan assets to fund the independent fiduciary chosen to manage and administer the plan). However, the amount is not sought from the Company itself, but rather from Plan assets, so Defendant is not facing this amount as a financial loss, which weighs in favor of entry of default judgment. *See, e.g.*, *Innovative Steel Sys., Inc.*, 2012 WL 1552791, at *4 (where plaintiff did not seek monetary damages but only injunctive relief, finding the request for $1,500 in Plan assets—not company money—to fund the independent fiduciary a reasonable amount of money at stake that weighed in favor of granting default judgment).

          d.    *Possibility of a Dispute Concerning Material Facts*

The fifth factor under *Eitel* "considers the possibility of dispute as to any material facts in the case." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The Company has not appeared in this action, let alone contested any of Plaintiff's alleged material facts, and "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to damages, will be taken as true." *Televideo Sys., Inc.*, 826 F.2d at 917-18. As outlined above, Plaintiff has provided the Court with well-pleaded allegations supporting its claims. Accordingly, no genuine dispute of material facts would preclude entry of default judgment.

          e.    *Whether the Company's Default was the Product of Excusable Neglect*

Upon review of the record, the Court concludes that the Company's default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The Company was properly served with process. (Dkt. No. 17.) Other Plan co-fiduciaries were served and appeared

in this action and resolved the matter by entered into consent judgments with Plaintiff. (Dkt. Nos. 13-14.) Nevertheless, the Company still has not appeared or otherwise defended itself in this action. The record suggests that the Company has chosen not to defend itself, not that the default resulted from any excusable neglect. This *Eitel* factor therefore favors the entry of default judgment.

####### f.      *Public Policy Favoring Decision on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the mere existence of [Federal Rule of Civil Procedure] 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 285 F. Supp. 2d at 1177. The Company's failure to answer the complaint precludes a decision on the merits. Although cognizant of the policy in favor of decision on the merits, this factor alone does not, by itself, preclude entry of default judgment against the Company. *See id.*

\* \* \*

A majority of the *Eitel* factors support entry of default judgment against the Company. The Court therefore concludes that Plaintiff is entitled to the entry of default judgment against the Company with respect to all ERISA violations alleged in the complaint and will make a recommendation to that effect.

**B.     Relief Sought**

In its motion for default judgment, Plaintiff requests primarily injunctive relief, including an order requiring the Company to restore the lost assets to the fund, removal of the Company from its position as Plan Administrator and named fiduciary of the Plan and appointment of an independent fiduciary with discretionary authority to administer the Plan to effective its termination and distribution of the Plan assets to the participants and beneficiaries. The relief sought was requested in the complaint. (Dkt. No. 1 at 8.)

Moreover, Plaintiff has submitted sufficient evidence to justify the relief sought. With respect to the loss amount, the Paine Declaration adequately addresses how Plaintiff calculated the loss amount. (*See generally* Dkt. No. 22-1.) But even in the Paine Declaration's absence,  Ng agreed to restore that amount pursuant to his consent judgment (*see* Dkt. No. 13), and taking the

complaint allegations as true, the Company is therefore liable for the restoration of the same amount as Ng's co-fiduciary pursuant to ERISA Section 405, 29 U.S.C. § 1105(a).

In addition, the Court finds that the injunctive relief that Plaintiff proposes is appropriate pursuant to 29 U.S.C. §§1332(a)(5) and 1109(a),[2] and because the Company's breaches of fiduciary duties and abandonment of the Plan has caused and will continue to cause irreparable harm.

Plaintiff requests that Receivership Management, Inc., 783 Old Hickory Blvd., Suite 255, Brentwood, TN 27027, be appointed as an independent fiduciary to the Plan. The declaration submitted by Robert Paine, an investigator for the United States Department of Labor, Employee Benefits Security Administration division, states that Mr. Paine consulted with several prospective independent fiduciaries regarding the process of maintaining the Plan given its current status, the ongoing bankruptcy proceedings facing RE Loans LLC and Mortgage Fund 08 LLC, the need to locate Plan participants, and file an annual Internal Revenue Service Form 5500 on behalf of the Plan. (Dkt. No. 22-1 ¶ 9.) Mr. Paine received fee proposals from these prospective fiduciaries. (*Id.*) After reviewing and comparing the fee proposals, combined with his knowledge of other independent fiduciaries appointed to do similar work on ERISA-covered plans that the Employee Benefits Security Administration's San Francisco Regional Office investigates, Mr. Paine concluded that Receivership Management's $13,000 fee proposal is reasonable and consistent with the market for the required work. (*Id.* ¶ 10.) The Court credits Mr. Paine's conclusion that Receivership Management's proposal is reasonable such that it should be the chosen independent fiduciary.

Lastly, Plaintiff asks the Court to authorize payment to Receivership Management of up to $13,000 from assets of the Plan for the first two years and an additional $1,100 in Plan assets for each year thereafter. As stated above, Mr. Paine avers that this amount is reasonable based on his review of fee proposals from various independent fiduciaries. (Dkt. No. 22-1 ¶¶ 9-10.) This

---

[2] ERISA Section 409(a), 29 U.S.C. § 1109(a) provides, in pertinent part, that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter . . . shall be subject to such other equitable or remedial relief as the court may deem appropriate, *including removal of such fiduciary.*"

14

amount is much higher than the plan assets generally awarded to fund independent fiduciaries. *See, e.g.*, *Innovative Steel Sys., Inc.*, 2012 WL 1552791, at *5 ($1,500); *Vigilance, Inc.*, 2009 WL 2031767, at *3 ($3,500); *Zoltrix*, 2007 WL 2990429, at *3 ($2,971.25). At oral argument Plaintiff explained that the independent fiduciary's responsibilities in this case are more complex than the average case given that it will be tasked with tracking multiple bankruptcy proceedings in order to track the Plan's assets invested in RE Loans LLC and Mortgage Fund 08 LLC. In addition, counsel indicated that while other companies' proposals were in a similar dollar range, only Receivership Management's proposal capped its maximum costs. Under these circumstances, the Court concludes that the $13,000 in Plan assets requested to fund the independent fiduciary is reasonable.

## CONCLUSION

For the reasons described above, subject to Plaintiff filing and serving the declaration described above, the Court RECOMMENDS that:

1.  Plaintiff's motion for default judgment (Dkt. No. 22) be granted.

2.  Defendant Bar-K, Inc. (the "Company") be removed as a fiduciary to the Innovative Steel Systems, Inc. 401(k) Plan (the "Plan").

3.  The Company is permanently enjoined from violating the provisions of ERISA.

4.  As the Company is jointly and severally liable for causing the Plan losses of $1,310,252.16, including pre-judgment lost-opportunity costs as calculated through June 30, 2014, judgment shall be entered against the Company in that amount.

5.  Receivership Management, Inc., 783 Old Hickory Blvd., Suite 255, Brentwood, TN 27027 (Phone: (615) 370-0051) as the Independent Fiduciary to the Plan who:

    (a) will be responsible for collecting, marshaling, paying out, and administering all of the Plan's assets and taking further action with respect to the Plan as appropriate, including terminating the Plan when all of its assets are distributed to all eligible participants and beneficiaries;

    (b) pursuant to the procedures outlined in the Employee Benefits Security Administration's Field Assistance Bulletin 2014-01, must exercise reasonable care and diligence

1 to identify and locate each Plan participant and beneficiary who is eligible to receive a distribution
2 under the terms of the Plan;
3   (c) shall have all the rights, duties, discretion, and responsibilities of a trustee,
4 fiduciary, and Plan Administrator under ERISA, including filing an annual Internal Revenue
5 Service Form 5500;
6   (d) shall be authorized to delegate or assign fiduciary duties as appropriate and
7 allowed under the law and may retain such assistance as it may require, including attorneys,
8 accountants, actuaries, and other service providers;
9   (e) shall be authorized to receive up to $13,000 from the assets of the Plan to
10 operate the Plan for two years from the date it is appointed by the Court, and an additional $1,100
11 from the assets of the Plan to operate the Plan for each year thereafter;
12   (f) shall be authorized to have full access to all data, information, and calculations
13 to the Plan's possession and under its control, including information and records maintained by the
14 Plan's custodial trustee or service provider;
15   (g) shall have the authority to give instructions respecting the disposition of assets
16 of the Plan;
17   (h) shall comply with all applicable rules and laws; and
18   (i) shall cooperate with all reasonable requests for information the Secretary may
19 have.
20  Plaintiff shall serve a copy of this report and recommendation on the Company within
21 three business days from the filing and date of this report and recommendation and shall file a
22 proof of service with the Court.
23  Any party may file objections to this report and recommendation with the district court
24 judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ.
25 P. 72(b); Civ. L.R. 72-3. Failure to file objections within the specified time may waive the right to
26 appeal the District Court's ultimate Order.
27  **IT IS SO ORDERED.**
28 Dated: June 4, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

17